IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Steve Podkulski (B-53394), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21 C 6480 |
| v. ) | |
| ) | Hon. Elaine E. Bucklo |
| Dr. Tucco, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff's motion to submit for review additional facts [195] is denied. Defendants' summary judgment motion [185] is granted.

## BACKGROUND

Plaintiff Steve Podkulski, an Illinois state prisoner currently confined at Menard Correctional Center ("Menard"), filed this *pro se*[1] civil rights action pursuant to 42 U.S.C. § 1983 back in December 2021, alleging violations of his constitutional rights while he was incarcerated at Stateville Correctional Center. Plaintiff claims that Defendants Lusecita Galindo ("Galindo") and Warden Kenneth Osborne ("Osborne") subjected him to unconstitutional living conditions and retaliated against him. Defendants have moved for summary judgment, Plaintiff responded to Defendants' motions for summary judgment, and Defendants have replied. For the reasons discussed below, the Court grants Defendants' motion for summary judgment.

**I.     Northern District of Illinois Local Rule 56.1**

---

[1] The Court notes that it recruited multiple attorneys to represent Plaintiff in this matter. (*See* Dkt. 80, 05/22/23 order, stating that "the undersigned observes that plaintiff has had multiple attorneys recruited to represent him, and that three have concluded that they could not pursue this case consistent with Rule 11. The undersigned considers these withdrawals to be some evidence of the weakness of Plaintiff's claims, which counsels further against the appointment of a seventh attorney.") Plaintiff's *pro se* second amended complaint (Dkt. 90, Plaintiff's second amended complaint), which is the operative complaint before this Court, was filed on July 28, 2023.

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. Rule 56.1 requires the party moving for summary judgment to provide a statement of material facts and a supporting memorandum of law. LR 56.1(a)(1), (2) (N.D. Ill.) (amd. Feb. 18, 2021). The statement of material facts "must consist of concise numbered paragraphs[,]" and "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it." LR 56.1(d)(1),(2). When addressing facts in its memorandum of law, the moving party "must cite directly to specific paragraphs in the LR 56.1 statements or responses." LR 56.1(g).

The party opposing summary judgment must submit a supporting memorandum of law and a response to the moving party's statement of facts. LR 56.1(b)(1), (2). A fact may be admitted, disputed, or admitted in part and disputed in part. LR 56.1(e)(2). To dispute an asserted fact, the opposing party "must cite specific evidentiary material that controverts the fact" and explain "how the cited material controverts the asserted fact." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate[.]" *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3).

Here, Defendants filed a Rule 56.1 statement of material facts with their motion for summary judgment. (Dkts. 185, 187.) Consistent with the Local Rules, Defendants also provided Plaintiff with a Local Rule 56.2 Notice, which explains what Local Rule 56.1 requires of a litigant opposing summary judgment. (Dkt. 188.)

For his part, Plaintiff submitted a "response" to Defendants' statement of facts (Dkt. 196), which admits some facts and disputes others with no citations to the record. Plaintiff also filed

several short documents captioned as "responses" to Defendants' memorandum of law (Dkts. 194, 197).

Even generously construed, Plaintiff's "response" at docket no. 196 cannot be deemed an appropriate response to Defendants' statement of material facts.

Although courts construe *pro se* pleadings liberally, *see Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("[E]ven *pro se* litigants must follow procedural rules."). Local Rule 56.1 "provides the only acceptable means of disputing the other party's facts and of presenting additional facts to the district court." *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995); *see also Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005).

Under LR 56.1, Plaintiff was required to respond to each numbered statement of fact by admitting the fact, disputing it, or admitting it in part and disputing it in part. LR 56.1(e)(2). Plaintiff failed to do so here.

Because Plaintiff did not properly respond to Defendants' LR 56.1 statement of facts, the Court accepts Defendants' "uncontroverted version of the facts to the extent that it is supported by evidence in the record." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

Additionally, Plaintiff's statement of additional facts (Dkt. 200) is problematic.[2] This document is difficult to parse; it contains at least one opening paragraph of generalized

---

[2] The Court notes that on November 26, 2024, Plaintiff filed a motion to submit for review additional facts (Dkt. 195). That motion, which simply attaches a number of medical records, is denied. The Court understands the document submitted at docket no. 200 (Dkt. 200) to be Plaintiff's statement of additional facts. Defendants have construed this document at such and responded to it accordingly (Dkt. 216).

3

commentary followed by a series of "declarations." As such, Plaintiff's statement of additional facts runs afoul of the Court's Local Rules. *See* LR 56.1(b)(3), (d); *see also Almy v. Kickert Sch. Bus Line, Inc.*, No. 08-cv-2902, 2013 WL 80367, at *2 (N.D. Ill. Jan. 7, 2013) ("[C]ourts are not required to 'wade through improper denials and legal arguments in search of a genuinely disputed fact.'") (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)). Therefore, the Court has considered Plaintiff's statement of additional facts only to the extent it is supported by the record or where Plaintiff could properly testify about the matters asserted. *See Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); *see also* Fed. R. Evid. 602.

With these guidelines in mind, the Court turns to the facts of this case, stating those facts as favorably to Plaintiff as the record and LR 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012).

## II. Facts

Plaintiff is an individual in the custody of the Illinois Department of Corrections (IDOC). (Dkt. 187, Defendants' Statement of Facts, ¶ 1.) Plaintiff alleges that he was subjected to retaliation and unconstitutional living conditions while in custody at Stateville Correctional Center (Stateville). (Dkt. 90, Plaintiff's Second Amended Complaint.) The allegations in the second amended complaint pertain to a short period of time between September 2021 and October 2021. (*See* Dkt. 90; Dkt. 185-4, Plaintiff's Deposition at pg. 64:22-24; 65:1-4.)

In his second amended complaint, Plaintiff alleges that Defendants subjected him to unsanitary and unsafe living conditions in cell 228 in B house, where he allegedly became sick with e-coli poisoning, MRSA, and pseudomonas.[3] (*See* Dkt. 90.) With respect to the conditions

---

[3]   E. Coli is a group of bacteria that can cause infections in your gut (GI tract), urinary tract and other parts of your body. Most of the time, it can live in your gut without hurting you. But some strains can make you sick with watery diarrhea, vomiting and a fever. *See* https://myclevelandclinic.org/health/diseases/16638-e-coli-infection (last visited May 12, 2025.) MRSA is a type of bacteria that is resistant to several antibiotics. If left untreated, MRSA

in the cell, Plaintiff alleges the presence of bird and mouse feces, cockroaches, a toilet that would not flush, and a sink that "had half full stagnant water in it." (*See* Dkt. 90; Dkt. 185-4 at pg. 62:18-21.) Plaintiff also alleges that Defendants retaliated against him for filing this lawsuit. (*See* Dkt. 90.) Plaintiff claims that Defendant Osborne worked with Dr. Marlene Henze to take away his Klonopin medication (and crush his medications) for filing the instant lawsuit, and that Defendant Galindo took away his medical supplies in connection with the suit. (*See id.*)

Defendant Kenneth Osborne was the Assistant Warden of Programs at Stateville from February 2021 to April 2023. (Dkt. 187 at ¶ 10.) From September 2021 to October 2021, Defendant Osborne's responsibilities included overseeing rehabilitative services for individuals in custody, including religion, education, cognitive behavioral therapies, counseling, case management services, and transactional matters, as well as oversight of the healthcare unit, along with Heathcare Unit Administrator Lusecita Galindo. (*Id.* at ¶ 11.)

The declaration of Defendant Osborne represents that: from September 2021 through October 2021, he had no personal knowledge of, nor would he be personally responsible to fix rodent, roach, mice, or bird infestations in Plaintiff's cell or Stateville's B-house; he was not privy to any grievances made by Plaintiff; from September 2021 through October 2021, he had no personal knowledge or observation of any conditions at Stateville that could cause a substantial risk of serious injury to individuals in custody, including Plaintiff; plumbing issues are typically addressed and fixed by Stateville's in-house tradesmen, with the occasional outside contractors being engaged when the issues are beyond the scope of the in-house tradesmen's knowledge; he

---

infections cause sepsis or death. *See* https://www.cdc.gov/mrsa/about/index.html (last visited May 12, 2025.) Pseudomonas is a group of bacteria commonly found in the environment, like in soil and water. https://www.cdc.gov/pseudomonas/about/index.html (last visited May 12, 2025.)

is not a medical professional and has no medical training; he did not have the responsibility or ability to take away medication or change the way medication is distributed to individuals in custody; the responsibility or ability to discontinue medication or change the way medication is distributed to individuals in custody was for the Wexford Health Sources, Inc.; he never had a conversation with Plaintiff and/or Dr. Marlene Henze where he told Plaintiff that either Dr. Henze or he would take away Plaintiff's seizure medication and give him only crushed medication unless he dropped this lawsuit; and, he has no personal knowledge of Plaintiff, nor does he have any personal knowledge of speaking to Plaintiff during his time as Assistant Warden of Programs at Stateville. (*Id.* at ¶¶ 12-20.)

Defendant Lusecita Galindo was the Healthcare Unit Administrator at Stateville from September 2021 until October 2021. (Dkt. 185-2 at ¶ 2.) From September 2021 through October 2021, Defendant Galindo's responsibilities included oversight of the healthcare unit, ensuring that individuals in custody receive services as contracted by the vendor Wexford Health Sources, Inc., including medical and physical therapy and ensuring reports were completed and submitted. (Dkt. 187 at ¶ 22.) The declaration of Galindo represents that: she did not have the responsibility or ability to discontinue a particular medical supply being given to individuals in custody, including Plaintiff; the responsibility to regulate or discontinue an individual's particular supply was for Wexford Health Sources, Inc.; she never had a conversation with Plaintiff or another employee at Stateville wherein she threatened adverse action against Plaintiff unless he dropped this lawsuit; she does not have the ability to set or restrict yard time for individuals in custody, including Plaintiff; she does not have the ability to set or restrict family visits for individuals in custody, including Plaintiff; and, she does not recall ever having received a copy of Plaintiff's lawsuit from him between September 2021 through October 2021. (*Id.* at ¶¶ 21-25, 27-29.)

Plaintiff testified during his deposition that he is familiar with the IDOC and Stateville grievance process and has written around 100 of them. (*Id.* at ¶ 32.) Plaintiff filed a number of grievances between September 2021 through October 2021, but did not grieve any medical concerns. (*Id.* at ¶ 33.)

During his deposition, Plaintiff testified that he was seen every day by medical providers in October and November 2021. (*Id.* at ¶ 36.) Plaintiff was seen by an outside physician at UIC hospital, who noted that Plaintiff's wounds had healed and did not present any signs of infection. (*Id.* at ¶ 37.) Plaintiff testified that his MRSA and e-coli infections cleared and he is not infected with them anymore. (*Id.* at ¶ 38.) Plaintiff also testified that, during the time period relevant to the operative complaint, he refused medical treatment by staff at Stateville, including refusing to have his foot dressed, by not verbalizing medical concerns, and by refusing antibiotics. (*Id.* at ¶ 39.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986); *see also Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255.

The parties seeking summary judgment have the initial burden of showing that there is no

genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010). If the moving parties demonstrate the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012).

**IV.     Discussion**

At the outset, the Court observes that Defendants seem to be moving for summary judgment on Plaintiff's claims on two grounds: exhaustion and the substantive merits. (*See* Dkt. 186 at pgs. 4, 7; *see also* Dkt. 215 at pgs. 7-8.) With respect to exhaustion (as it concerns Plaintiff's conditions claim), Defendants assert in their Memorandum that "[a]t no point does Plaintiff make mention, in grievances or otherwise, that any medical conditions were caused by cleaning his cell or living in it." (Dkt. 186 at pg. 4.) They assert further that "[a]s an individual who is well versed in the grievance process and has written numerous grievances during his time at Stateville, Plaintiff's lack of grieving the issue at hand in this case is certainly remarkable." (*Id.*) With respect to exhaustion (as it concerns Plaintiff's retaliation claim), Defendants assert in their Memorandum that "[t]o the extent[] Plaintiff is referring to the current case at hand, his claims are unexhausted as far as alleging that the reason Defendants retaliated is because he brought forth the very suit; therefore, his claims cannot be brought in federal court. They would not be addressed on the merits and instead would be considered procedurally defaulted." (Dkt. 186 at pg. 7.)

Defendants do not elaborate upon the exhaustion issue or identify any relevant exhaustion caselaw in connection with their arguments. While the Court acknowledges that Plaintiff's *pro se*

8

amended complaint is dense and difficult to follow (and that Plaintiff has further confused matters by submitting a disorganized set of responses to the motion for summary judgment), Defendants' arguments in their Memorandum concerning exhaustion are underdeveloped and perfunctory in nature, such that the Court considers them waived. *See Schaefer v. Universal Scaffolding & Equip. LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("perfunctory and undeveloped arguments are waived").

The Court therefore turns to the substantive merits of Plaintiff's claims.

### A. Plaintiff's Unconstitutional Conditions of Confinement Claim

The Eighth Amendment imposes a duty to "provide humane conditions of confinement" and "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 664 (7th Cir. 2012). Determining the violation of this constitutional right involves a two-fold analysis: (1) "whether the conditions at issue were sufficiently serious so that a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities"; and (2) "whether prison officials acted with deliberate indifference to the conditions in question." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal quotation marks and citation omitted). "Deliberate indifference . . . means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.*

Defendants argue that "Plaintiff's assertions and lack of evidence do not rise to the level of inhumane conditions under the Eighth Amendment, nor is there a causal nexus established between cell conditions and the health diagnoses Plaintiff received." (Dkt. 186.) The Court agrees.

Plaintiff clarifies in his response, that "[his] 8th Amendment claim is on a pest infestation so extreme that it caused [him] to contract e-coli, MERSA, and pseudonomas[.]" (Dkt. 197 at pg.

9

1.) The Court therefore confines its analysis of Plaintiff's conditions claim to what he describes as a "pest infestation."

Initially, there is no evidence in the record–aside from Plaintiff's vaguely-worded statements at his deposition–of the existence of any of "pest infestation" in his cell (or, even more generally, in the B house). Further, while Plaintiff adamantly maintains in this lawsuit that he contracted various maladies/illnesses from a complained-of "pest infestation," he points to no evidence whatsoever to support this contention.

That said, Plaintiff's mere exposure to some "pests" (in his cell, or even more generally, in the B house)–over what appears to be a relatively short period of time of about a month (from September 2021 to October 2021)–is regrettable and likely was unpleasant. Nevertheless, this case is at the summary judgment phase, and the particular situation Plaintiff describes here does not establish an objectively serious condition. This is so despite Plaintiff's personal and generalized "belie[f]" that his "claim[] rises to [the] level [of a constitutional violation]." (*See* Dkt. 197 at pg. 2.) Valid claims of unconstitutional conditions involve far more severe situations. *See, e.g., Gray v. Hardy*, 826 F.3d 1000, 1007 (7th Cir. 2016) (plaintiff's evidence of filthy living conditions, an alleged lack of cleaning supplies, and prolonged pest infestation in his cell "present[ed] triable issues of fact for a jury [to] determine the degree of both physical and psychological harm he suffered as a result of the infestations and dirt"); *Bentz v. Hardy*, No. 15-1344, 638 Fed. App'x 535, 537 (7th Cir. 2016) (concluding that pest infestation claim survived summary judgment where plaintiff claimed that "the cell was so infested with cockroaches and earwigs that, despite [the plaintiff's] killing nearly 50 a day, the insects continued to crawl on him at night, keeping him awake."); *White v. Monohan*, 326 Fed. App'x. 385, 388 (7th Cir. 2009) (holding that the plaintiff presented sufficient evidence of objectively serious condition where his cells were infested with

cockroaches, ants, wasps, bees, spiders, and other insects over a four-year period, and where he saw a doctor at least ten times over this span to treat infections due to bites); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (allegation that roaches and mice were rampant, crawling on inmate's body stated a claim of an unconstitutional condition of confinement, particularly where the jail had sprayed only twice during a 16–month period); *Barbosa v. McCann*, No. 08 C 5012, 2011 WL 4062469 at *6 (N.D. Ill. Sept. 12, 2011) (finding that record evidence indicated inmate could prove insects and cockroaches were "rampant," there were so many that he could sleep only a few hours a night, and bugs or mice crawled on him and bit him).

Additionally, the Court notes that the undisputed evidence before this Court does not suggest deliberate indifference on the part of Defendants. Here, Defendants Galindo and Osborne have submitted declarations, which indicate that they did not have any knowledge of a "pest infestation" in Plaintiff's cell (or, more generally, in the B house), and also did not/would not have any control over Plaintiff's living conditions. (*See* Dkt. 187 at ¶¶ 10-14, 21-22.)

Accordingly, Defendants[4] are entitled to summary judgment on Plaintiff's Eighth Amendment conditions of confinement claim.

### B. Plaintiff's Retaliation Claim

To establish a claim of retaliation, a prisoner must show: (1) that he engaged in a protected activity; (2) he suffered a deprivation likely to prevent future protected activities; and (3) there was a causal connection between the protected activity and the deprivation. *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2009); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *see Mays v.*

---

[4] The Court observes that Plaintiff employs a "group pleading" style in his second amended complaint, such that there is some question as to whether Plaintiff intended to assert his conditions claim against both Galindo *and* Osborne. At this late-stage of the case, it still remains unclear to the Court (mainly due to Plaintiff's multiple and confusingly-worded responses to the summary judgment motion) whether he sues both Defendants in this action in connection with his conditions claim. Based on Plaintiff's statements in his response at docket no. 197 (*see* Dkt. 197 at pg. 1), it appears that Plaintiff seeks to sue both Galindo and Osborne in connection with the conditions claim.

*Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) (prisoner must show that the protected activity was "at least a motivating factor" in the retaliatory action). If the plaintiff satisfies these elements, the burden shifts to the defendant to rebut the causal inference with evidence showing that he would have taken the same action without any retaliatory motive. *See Mays*, 575 F.3d at 650; *Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005–06 (7th Cir. 2005). If the defendant provides legitimate and non-retaliatory reasons for his actions, then the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus. *See, e.g., Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012); *Zellner v. Herrick,* 639 F.3d 371, 379 (7th Cir. 2011). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Zellner*, 639 F.3d at 379.

Defendants argue that "Plaintiff cannot prove retaliation under the First Amendment because there is no reasonable inference of retaliatory motive." (Dkt. 186 at pg. 6.) The Court agrees.

Here, Plaintiff accuses Defendants of retaliating against him for filing the instant lawsuit, maintaining that they were responsible for terminating his seizure medication (and crushing his other medications)[5] and denying him medical supplies. At the pleading stage, these unsupported and generalized allegations were sufficient for Plaintiff to proceed. But, at this stage of the proceedings, it is clear that the claim cannot proceed further.

Here, Defendant Osborne has submitted evidence, which specifically states that he is not a

---

[5] The Court notes that Plaintiff has also asserted a stand-alone medical deliberate claim against Defendant Dr. Marlene Henze in connection with his Klonopin seizure medication and his crushed medications, and Defendant Henze has moved for summary judgment (*See* Dkts. 173, 174.) On May 9, 2025, the Court instructed Dr. Henze to re-file her motion by June 15, 2025 (because the motion did not include certain medical records referenced at Exhibit C). (*See* Dkt. 223.)

medical professional, has no medical training, and did not have the responsibility or ability to take away medication or change the way medication is distributed to individuals in custody. (*See* Dkt. 187 at ¶ 16-18.) Defendant Osborne's declaration also represents that he never had a conversation with Plaintiff and/or Dr. Marlene Henze where he told Plaintiff that either Dr. Henze or he would take away Plaintiff's seizure medication and give him only crushed medication unless he dropped his lawsuit. (*Id.* at ¶ 19.) Similarly, Defendant Galindo has presented evidence showing that she did not have the responsibility or ability to discontinue a particular medical supply being given to individuals in custody, including Plaintiff, and that she never had a conversation with Plaintiff or another employee at Stateville wherein she threatened adverse action against Plaintiff unless he dropped his lawsuit. (*Id.* at ¶¶ 23, 25.) Notably, Plaintiff testified at his deposition that Defendant Galindo "can't write any prescriptions. She can't administer any healthcare. She is just an administrator, a paper pusher, a supervisor of the people doing the healthcare." (Dkt. 185-4 at 86:23-24; 87:1-2.)

Despite this evidence, and in an attempt to defeat summary judgment on this claim, Plaintiff seems to contend that Defendants were indeed responsible for what he describes as "medical matters," despite their job roles/designations. (*See* Dkt. 197.) But Plaintiff provides no evidence to support this contention, and his bald speculation is not enough to defeat summary judgement. *See generally Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (a party "must present more than mere speculation or conjecture to defeat a summary judgment motion."); *see also Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (summary judgment is the 'put up or shut up' moment in a lawsuit.").

To the extent Plaintiff is now claiming in his response to the summary judgment motion that he had a conversation with Defendant Osborne and Dr. Henze "in the HCU between 3-1-21

13

and 6-1-21" at which time they told him to drop the suit, that statement runs afoul of the sham affidavit rule[6] insofar as Plaintiff specifically testified at his deposition that he *did not know* when he spoke to Defendant Osborne and Henze (or allegedly sent them copies of his complaint). (*See* Dkt. 185-4 at pg. 56:5-10, 20-21; 68:2-5.) Plaintiff's late-stage switch in his story, without any explanation as to why, is not sufficient to create a dispute of fact (as to Defendant Osborne).

Similarly, Plaintiff's various statements in response to the summary judgment motion about a purported conversation he had with a medical supply clerk ("Fred Doe") who told Plaintiff that "Defendant Galindo spoke to him and told him not give [Plaintiff] [his] ordered diapers anymore" (Dkt. 200 at pg. 2) is inadmissible hearsay and thus insufficient to create a dispute of fact (as to Defendant Galindo). *See* Fed. R. Evid. 801(c) ; *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003) (explaining that inadmissible hearsay is not permitted as evidence in support of summary judgment motion).

In short, on this record, no reasonable jury could find that Defendants Osborne and/or Galindo retaliated against Plaintiff for filing the instant lawsuit. Accordingly, summary judgment is warranted for Defendants on Plaintiff's retaliation claim.

**C. Defendant Galindo cannot be held liable for Plaintiff's section 1983 claims on account of her supervisory role**

To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the alleged violation of a right. *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023). There is no *respondeat superior*, or supervisory, liability under § 1983; rather, a plaintiff

---

[6] Under the sham affidavit rule, a party cannot overcome a motion for summary judgment by "submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony." *Adusumilli v. Chicago*, 164 F.3d 353, 360 (7th Cir. 1998); *see also James v. Hale*, 959 F.3d 307, 317 (7th Cir. 2020) ("parties cannot circumvent the purpose of summary judgment by creating sham issues of fact with affidavits that contradict their prior depositions."). Courts "may disregard new sworn testimony when it (1) contradicts that same witness's earlier sworn testimony and (2) fails to explain the contradiction or resolve any disparities." *James*, 959 F.3d at 317.

must show that the supervisory official violated the Constitution through his own conduct. *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

As Defendant Galindo correctly argues (*see* Dkt. 186 at pg. 8), she cannot be held responsible in this § 1983 action based on her role as a supervisory official, and, as discussed above, the evidence before this Court shows that she was not (and would not have been) directly involved in addressing the particular issues Plaintiff identifies in his second amended complaint.

Accordingly, Defendant Galindo is entitled to summary judgment as to this issue.

## V.    Conclusion

Defendants' motion for summary judgment (Dkt. 185) is granted.

Date:  May 28, 2025                                         /s/ Hon. Elaine E. Bucklo
                                                                                                             United States District Judge