IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Steve Podkulski (B-53394), | ) |
| Plaintiff, | ) |
| v. | ) Case No. 21 C 6480 |
| | ) Hon. Elaine E. Bucklo |
| Dr. Tucco, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant Henze's summary judgment motion [228] is granted. Plaintiff is directed to show cause by December 5th, 2025, why summary judgment should not be entered in favor of remaining Defendants Dr. Tucco and Dr. Battista. *See* Fed. R. Civ. P. 56(f)(1).

## BACKGROUND

Plaintiff Steve Podkulski, an Illinois state prisoner currently confined at Menard Correctional Center ("Menard"), filed this *pro se*[1] civil rights action pursuant to 42 U.S.C. § 1983 back in December 2021, alleging violations of his constitutional rights while he was incarcerated at Stateville Correctional Center. Plaintiff claims that Defendant Marlene Henze ("Henze") was deliberately indifferent to his serious medical needs. Defendant Henze has moved for summary judgment,[2] Plaintiff responded to Defendant's motion for summary judgment, and Defendant has

---

[1] The Court notes that it recruited multiple attorneys to represent Plaintiff in this matter. (*See* Dkt. 80, 05/22/23 order, stating that "the undersigned observes that plaintiff has had multiple attorneys recruited to represent him, and that three have concluded that they could not pursue this case consistent with Rule 11. The undersigned considers these withdrawals to be some evidence of the weakness of Plaintiff's claims, which counsels further against the appointment of a seventh attorney.") Plaintiff's *pro se* second amended complaint (Dkt. 90, Plaintiff's second amended complaint), which is the operative complaint before this Court, was filed on July 28, 2023.
[2] Defendant Henze originally filed her motion for summary judgment back in October 2024. (*See* Dkts. 173, 174.) On May 9, 2025, the Court entered an order stating that Defendant Henze's motion for summary judgment was missing a number of exhibits. (*See* Dkt. 223.) The Court therefore ordered Defendant Henze to re-file her motion for summary judgment and gave Plaintiff additional time to respond. (*See id.*) In accordance with the Court's instruction, Defendant Henze re-filed her motion for summary judgment (Dkt. 228, re-filed as "corrected" motion for summary judgment) on June 16, 2025.

replied. For the reasons discussed below, the Court grants Defendant Henze's motion for summary judgment.

I. **Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. Rule 56.1 requires the party moving for summary judgment to provide a statement of material facts and a supporting memorandum of law. LR 56.1(a)(1), (2) (N.D. Ill.) (amd. Feb. 18, 2021). The statement of material facts "must consist of concise numbered paragraphs[,]" and "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it." LR 56.1(d)(1),(2). When addressing facts in its memorandum of law, the moving party "must cite directly to specific paragraphs in the LR 56.1 statements or responses." LR 56.1(g).

The party opposing summary judgment must submit a supporting memorandum of law and a response to the moving party's statement of facts. LR 56.1(b)(1), (2). A fact may be admitted, disputed, or admitted in part and disputed in part. LR 56.1(e)(2). To dispute an asserted fact, the opposing party "must cite specific evidentiary material that controverts the fact" and explain "how the cited material controverts the asserted fact." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate[.]" *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3).

Here, Defendant Henze filed a Rule 56.1 statement of material facts with her motion for summary judgment. (Dkt. 230.) Consistent with the Local Rules, Defendant also provided Plaintiff with a Local Rule 56.2 Notice, which explains what Local Rule 56.1 requires of a litigant opposing summary judgment. (Dkt. 236.)

For his part, Plaintiff submitted a response to Defendants' statement of facts (Dkt. 245), a memorandum of law (Dkt. 246), a declaration (Dkt. 248), and two documents captioned as "additional facts" (Dkts. 241, 249), to which Defendant Henze has responded (Dkt. 254).[3]

Even generously construed, Plaintiff's "response" at docket no. 245 cannot be deemed an appropriate response to Defendant Henze's statement of material facts.[4]

Although courts construe *pro se* pleadings liberally, *see Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("[E]ven *pro se* litigants must follow procedural rules."). Local Rule 56.1 "provides the only acceptable means of disputing the other party's facts and of presenting additional facts to the district court." *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995); *see also Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005).

Because Plaintiff did not properly respond to Defendants' LR 56.1 statement of facts, the Court accepts Defendant's "uncontroverted version of the facts to the extent that it is supported by evidence in the record." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

---

[3] Plaintiff's summary judgment materials are disorganized and difficult to parse. The docket shows that Plaintiff submitted a statement of additional facts on July 2, 2025 (Dkt. 241), a declaration on July 28, 2025 (Dkt. 248), and a second statement of additional facts on July 28, 2025 (Dkt. 249). On August 19, 2025, the Court struck Plaintiff's declaration (Dkt. 248) and second statement of facts (Dkt. 249) because those documents appeared to have been submitted in connection with Plaintiff's second motion for reconsideration of the Court's May 28, 2025, order granting *Defendants Galindo and Osbourne* summary judgment. (*See* Dkt. 250.) Upon further review though, it appears that Plaintiff submitted the July 28, 2025 declaration and the second statement of facts in connection with the instant motion for summary judgment.

[4] The Court will not set forth an exhaustive list here, but points out that Plaintiff's response is deficient in a number of ways and does not comply with the Local Rules. For instance, a number of the statements that Plaintiff purports to dispute are unsupported by citations to the record, or do not cite to specific evidentiary material in the record. Moreover, a number of Plaintiff's responses fail to directly respond to Defendant's facts, contain legal argument, and/or are argumentative.

Similarly, Plaintiff's "additional facts" (at dockets. 241 and 249) are problematic. The additional facts, which are set forth over two separate documents, are largely argumentative and unsupported by evidentiary material. As such, Plaintiff's statement of additional facts runs afoul of the Court's Local Rules. *See* LR 56.1(b)(3), (d); *see also Almy v. Kickert Sch. Bus Line, Inc.*, No. 08-cv-2902, 2013 WL 80367, at *2 (N.D. Ill. Jan. 7, 2013) ("[C]ourts are not required to 'wade through improper denials and legal arguments in search of a genuinely disputed fact.'") (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)). Therefore, the Court has considered Plaintiff's statement of additional facts only to the extent it is supported by the record or where Plaintiff could properly testify about the matters asserted. *See Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); *see also* Fed. R. Evid. 602.

With these guidelines in mind, the Court turns to the facts of this case, stating those facts as favorably to Plaintiff as the record and LR 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012).

**II.     Facts**

Plaintiff is an individual in the custody of the Illinois Department of Corrections ("IDOC"). (Dkt. 230, Defendant's Statement of Facts, ¶ 4.) At the times relevant to this lawsuit, Plaintiff was housed at Stateville Correctional Center ("Stateville"). (*Id.*) Defendant Henze was employed by Wexford Health Sources, Inc. ("Wexford") and served as Stateville's Medical Director from October 2018 through the time that Plaintiff was transferred out of Stateville in June of 2022. (*Id.* at ¶ 6.)

*Plaintiff's Second Amended Complaint*

In his second amended complaint, Plaintiff alleges that in September 2021, he was placed in cell B-228 that "contained bird feces, cockroaches, mice/feces, a sink full of stagnant water, and

toilet water running down wall that contained feces/urine." (Dkt. 90, Plaintiff's Second Amended Complaint at pg. 1.)[5] Plaintiff alleges that he "caught infections" from the cell. (*Id.* at pg. 2.) Plaintiff claims that he "contracted e-coli poisoning, M[]RSA, and psyodomosis [*sic*][.]" (*Id.*) Plaintiff alleges that he complained to medical personnel at Stateville and was "told [he] had diabetic toe ulcers and was just sick." (*Id.*) Plaintiff claims that the "sores on [his] feet turned yellow/orange/black, oozing/bubbling puss." (*Id.*) Plaintiff claims that he eventually received some treatment for his various ailments. (*Id.* at pgs. 3-4.) The second amended complaint also alleges that Defendant Henze took away Plaintiff's Klonopin seizure medication and "start[ed] crushing all [his] other medication[.]" (*Id.* at pg. 6.) Plaintiff alleges that "this caused [him] medical issues and great suffering[.]" (*Id.*)

### *Overview of the Sick Call Request System at Stateville*

Sick call allows an inmate to receive a medical evaluation from a registered nurse within a 24-hour time frame. (Dkt. 230 at ¶ 7.) The nurse evaluating the inmate would provide a medical assessment and appropriate medical plan based on the inmate's specific complained-of condition. (*Id.* at ¶ 8.) The nurse's plan and medical assessment would be based on IDOC nurse protocols for an inmate's specific medical issue. (*Id.* at ¶ 9.)

While at Stateville in 2021 and 2022, Plaintiff knew the procedure for the sick call request. (*Id.* at ¶ 10.) Dr. Henze, as the medical Director at Stateville, would not have any knowledge of a sick call request and subsequent nurse evaluation unless the inmate was critically ill, critically injured, or required immediate medical attention. (*Id.* at ¶ 11.) If a nurse felt an inmate needed a higher level of care such as a doctor, nurse practitioner, or physician's assistant, the inmate would

---

[5] The Court notes that the allegations concerning the cell conditions were the subject of the summary judgment motion filed by Defendants Galindo and Osbourne back in October 2024. (*See* Dkt. 185.) On May 28, 2025, the Court granted Defendants' motion for summary judgment. (*See* Dkt. 224.)

5

be placed on the requested provider's schedule and seen within 24 to 72 hours. (*Id.* at ¶ 12.)

### *Overview of Plaintiff's Cell Placement at Stateville*

In September 2021, Plaintiff was housed in Cell B228, and Dr. Henze had no control over Plaintiff's cell placement while he was housed at Stateville. (*Id.* at ¶ 13.)

### *Relevant Treatment of Plaintiff at Stateville Before September 2021*

On February 8, 2021, Plaintiff had an avulsed right toenail and was treated with A&D ointment and his foot was wrapped. (*Id.* at ¶ 14.) On April 9, 2021, Dr. Henze evaluated the Plaintiff's right toe, noted that the nail was removed and there was no evidence of infection, soaked his foot in antibacterial soap, and provided him a triple antibiotic ointment. (*Id.* at ¶ 15.) On July 9, 2021, Dr. Henze evaluated Plaintiff's right toe and prescribed him Augmentin.[6] (*Id.* at ¶ 16.)

### *Plaintiff's Complaint and Grievances in September of 2021*

Plaintiff testified that in September 2021, he alerted medical staff he was sick. (*Id.* at ¶ 17.) There are no IDOC medical records that show Plaintiff made any sick call requests in September of 2021 related to any medical care needed. (*Id.* at ¶ 18.) The only IDOC medical record of Plaintiff is a psychiatry visit on September 7, 2021, and Dr. Henze was not involved in that visit. (*Id.* at ¶ 19.) Plaintiff testified that he is familiar with the IDOC and Stateville grievance process and sick call procedures. (*Id.* at ¶ 20.)

On September 1 and 18, 2021,[7] Plaintiff was seen by a correctional counselor for the IDOC and was reported as having no issues or concerns. (*Id.* at ¶ 21.) In September of 2021, Plaintiff filed a number of grievances. (*Id.* at ¶ 22.) Specifically, on September 15, 2021, Plaintiff filed a

---

[6] Augmentin is an antibiotic that is used for infections caused by certain bacteria. *See* https://www.webmd.com/drugs/2/drug-4333-5050/augmentin-oral/amoxicillin-clavulanic-acid-suspension-oral/details (last visited October 29, 2025).

[7] Defendant asserts that on September 1, 2021, and **September 8, 2021**, Plaintiff was seen by a correctional counselor for the IDOC and was reported as having no issues or concerns. (Dkt. 230 at ¶ 21.) However, the September 8, 2021, date appears to be a typo, as the "Cumulative Counseling Summary" shows a notation from **September 18, 2021**, that "[i]ndividual in custody was seen and reported no issues or concerns." (*See* Dkt. 230-6 at pg. 25.)

grievance related to the cable in his cell not working. (*Id.* at ¶ 23.) On September 24, 2021, Plaintiff filed a grievance requesting to see a dentist because he had pain in his teeth and wanted his teeth fixed; this grievance does not mention Dr. Henze. (*Id.* at ¶ 25.) On September 24, 2021, Plaintiff filed another grievance requesting his pillow cases and sheets are correctly fixed. (*Id.* at ¶ 26.) On September 24, 2021, Plaintiff filed a grievance requesting a new GTL tablet. (*Id.* at ¶ 27.) On September 27, 2021, Plaintiff filed a grievance requesting his GTL tablet and commissary blankets repaired. (*Id.* at ¶ 28.) Defendant Henze represents that in September 2021, she had no notice of Plaintiff's alleged complaints or alleged requested treatment related to toe ulcers, e-coli, MRSA or pseudomonas.[8] (*Id.* at ¶ 30.)

### *Treatment Received by Plaintiff from Dr. Henze and Medical Staff at Stateville*

On October 4, 2021, Plaintiff was seen on sick call with complaints of a constant runny nose. (*Id.* at ¶ 31.) Plaintiff was diagnosed with a head cold, given a rapid COVID test, given Zyrtec, and advised to go to sick call as needed. (*Id.* at ¶ 32.) On October 9, 2021, Dr. Henze evaluated Plaintiff and referred him to AMITA Health Joliet for nausea and vomiting because such signs and symptoms could be consistent with diabetic ketoacidosis, which must be treated in a hospital setting. (*Id.* at ¶ 33.) On October 9, 2021, Plaintiff was seen and evaluated at AMITA Health Joliet's emergency department and diagnosed with sinusitis. (*Id.* at ¶ 34.) On October 10, 2021, Plaintiff was discharged from AMITA Health Joliet and transferred back to Stateville. (*Id.* at ¶ 35.) On October 20, 2021, Plaintiff was evaluated, diagnosed with an infection of his right foot, ordered daily dressing changes, and prescribed cephalexin. (*Id.* at ¶ 36.) On October 22, 2021, Dr. Henze evaluated and assessed Plaintiff's toe ulcers on his left and right feet, obtained

---

[8] Pseudomonas is a type of bacteria that is commonly found outdoors, such as in soil and water. *See* https://www.webmd.com/a-to-z-guides/pseudomonas-infection (last visited October 29, 2025.)

culture swabs of them, and sent them to AMITA Health Joliet. (*Id.* at ¶ 37.) On October 29, 2021, a lab report was received from AMITA Health Joliet diagnosing Plaintiff with MRSA, gram-baccili, and e-coli. (*Id.* at ¶ 38; Dkt. 233 at pg. 156, Offender Outpatient Progress Notes showing lab results.) On October 29, 2021, Dr. Henze ordered Plaintiff to be isolated, receive an oral IV of antibiotics, prescribed him Bactrim and Augmentin, and ordered him to have daily dressing changes for his toe ulcers twice a day. (Dkt. 230 at ¶ 39.) On November 8, 2021, Dr. Henze referred Plaintiff to the University of Chicago for further evaluation of his toe ulcers and to receive an MRI. (*Id.* at ¶ 40.) On November 11, 2021, Dr. Henze evaluated and assessed Plaintiff for a hunger strike physical that included evaluating his toes. (*Id.* at ¶ 41.) On November 17, 2021, a second wound culture report demonstrated that Plaintiff had developed a pseudomonas wound infection and was prescribed Levofloxacin.[9] (*Id.* at ¶ 42.) By November 29, 2021, Plaintiff had received 8-9 doses of Levofloxacin. (*Id.* at ¶ 43.) On January 26, 2022, Plaintiff burned his foot and the wound was cleaned and dressed. (*Id.* at ¶ 44.) On February 23, 2022, Plaintiff was seen by a UIC Orthopedic & Sports Medicine physician from the prior referral by Dr. Henze who noted that his wounds had healed and did not note any signs of infections. (*Id.* at ¶ 45.) Plaintiff admitted that Dr. Henze treated and cleared him of his MSRA and e-coli infections. (*Id.* at ¶ 46.)

### *Plaintiff's Refusal of Medical Treatment*

On October 29, 2021, Plaintiff refused his oral antibiotics, an IV insertion for an IV of Vancomycin,[10] the measure of his toe ulcers, and dressing changes on both of his feet. (*Id.* at ¶ 47.) On November 1, 2021, Plaintiff refused an IV for antibiotics. (*Id.* at ¶ 48.) Plaintiff refused

---

[9] Levofloxacin is an antibiotic used to treat a variety of bacterial infections. *See* https://www.webmd.com/drugs/2/drug-14495-8235/levofloxacin-oral/levofloxacin-oral/details (last visited October 29, 2025.)
[10] Vancomycin is an antibiotic used to treat a variety of infections caused by certain bacteria. *See* https://www.webmd.com/drugs/2/drug-939/vancomycin-intravenous/details (last visited October 29, 2025.)

the antibiotics because he claimed they were causing him nausea, burning sensation, and seizures. (*Id.* at ¶ 49.) Plaintiff was repeatedly encouraged by Dr. Henze to continue to take antibiotics. (*Id.* at ¶ 50.) On November 18, 2021, Plaintiff refused his medication of Levofloxacin. (*Id.* at ¶ 51.) On November 24, 2021, Plaintiff refused his medication of antibiotics. (*Id.* at ¶ 52.) On December 1 and 6, Plaintiff refused dressing changes. (*Id.* at ¶¶ 53-4.) On February 15, 2022, Plaintiff refused all treatment. (*Id.* at ¶ 56.) On February 23, 2022, Plaintiff refused dressing changes. (*Id.* at ¶ 57.) On March 30, 2022, Plaintiff refused to receive an MRI of his left foot. (*Id.* at ¶ 58.)

### *Plaintiff's Treatment and Care Related to Klonopin and his Crushed Medications*

On December 3, 2021, Plaintiff was prescribed Klonopin for 30 days. (*Id.* at ¶ 60.) The IDOC prescription order form identifies Dr. Henze as the ordering physician. (Dkt. 235 at pg. 108.) The IDOC prescription order, which does not identify an ordering physician and is dated March 9, 2022, shows that Plaintiff was ordered Klonopin for 3 months. (Dkt. 230 at ¶ 61; *see also* Dkt. 235 at pg. 119.) On March 16, 2022, Dr. Henze discontinued Plaintiff's prescription for Klonopin and ordered all his other medications to be crushed. (Dkt. 230 at ¶ 63.) In December of 2022, Plaintiff was ordered a medicine change and prescribed Keppra until he was seen by a neurologist. (*Id.* at ¶ 64.) Plaintiff disagreed with Dr. Henze's medical decision to discontinue and take him off Klonopin. (*Id.* at ¶ 65.) According to Dr. Henze's Declaration, Plaintiff claimed he experienced symptoms of Todd's paralysis,[11] but such alleged symptoms were not life-threatening and were never witnessed by any persons. (*Id.* at ¶ 66.) Dr. Henze stopped renewing Plaintiff's prescription for Klonopin because based on her medical education, training and

---

[11] Wikipedia describes "Todd's Paralysis" as follows: Todd's paresis (or postictal paresis/paralysis, "after seizure") is focal weakness in a part or all of the body after a seizure. This weakness typically affects the limbs and is localized to either the left or right side of the body. It usually subsides completely within 48 hours. Todd's paresis may also affect speech, eye position (gaze), or vision. *See* https://en.wikipedia.org/wiki/Todd%27s_paresis (last visited October 28, 2025).

experience, she believed it would be more beneficial to Plaintiff to use "watchful waiting" to determine whether Plaintiff's symptoms changed, because she does not want to provide medications to patients unless there is an objective need for the medication. (*Id.* at ¶ 67.) "Watchful waiting" is within the community standard of care and encompasses closely watching a patient's condition unless signs or symptoms appear or change. (*Id.* at ¶ 68.) Eventually, in December of 2022, Plaintiff was prescribed Keppra for his seizure symptoms and complaints. (*Id.* at ¶ 69.) Based on her medical training, education, and experience, Dr. Henze allowed Plaintiff's medications to be crushed to ensure that Plaintiff would take all of his medications. (*Id.* at ¶ 70.) "Crush and float" is a standard tool/procedure used by Dr. Henze and other treating physicians at IDOC that involves crushing medications into a powdered substance and mixing it with a liquid. (*Id.* at ¶ 71.) Plaintiff disagreed with Dr. Henze's medical decision to crush his medications. (*Id.* at ¶ 72.)

Defendant Henze represents that she never had a conversation with Plaintiff and/or Warden Osbourne where she told Plaintiff that herself or Warden Osbourne would not crush or take Plaintiff's seizure medication if he dropped the lawsuit against them. (*Id.* at ¶ 62.)

### *Standard of Care*

Dr. Henze has submitted a Declaration, which makes the following representations: the standard of care is the general consensus of an approach to care in different clinical scenarios; she provided adequate and proper treatment to Plaintiff for his MRSA; all treatment and medical decision for Plaintiff did not cause Plaintiff to suffer any permanent injuries or damage; and, she desired the best possible outcome for Plaintiff in her treatment and care of him. (*Id.* at ¶¶ 73-7.)

**III.    Summary Judgment Standard**

Summary judgment is appropriate when the record, viewed in the light most favorable to

10

the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986); *see also Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255.

The parties seeking summary judgment have the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010). If the moving parties demonstrate the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012).

**IV. Discussion**

**A. Plaintiff's Eighth Amendment Medical Care Claim against Defendant Henze**

"The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including grossly inadequate medical care." *Lockett v. Bonson*, 937 F.3d 1016, 1022 (7th Cir. 2019) (cleaned up). To prevail on a claim that his medical care violated the Eighth Amendment, the plaintiff must establish that: (1) he suffered from an objectively serious medical condition and (2) the defendants

11

were deliberately indifferent to that condition. *See id.* at 1022 (citing *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)).

Defendant Henze concedes that "Plaintiff's condition of foot sores, his bacterial infections, and alleged seizures" (*see* Dkt. 229 at pg. 4) constitute objectively serious medical conditions. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) ("An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention."). However, Defendant Henze maintains that Plaintiff's claim fails on the second prong. The Court agrees.

Deliberate indifference consists of more than negligence or malpractice; the defendant must know of and disregard an excessive risk to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The requisite culpable state of mind for deliberate indifference is akin to criminal recklessness. *See, e.g., Cesal v. Moats*, 851 F.3d 714, 725 (7th Cir. 2017); *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012).

To prevail in a case like this (where the record shows Plaintiff received medical care for his various ailments at issue in this suit), the Court needs evidence that the treatment was "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment" in order to infer culpability. *Johnson v. Rimmer*, 936 F.3d 695, 707 (7th Cir. 2019) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)). In assessing a claim that a prisoner was subjected to treatment by medical professionals devoid of medical judgment, the court should "look at the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs." *Riley v. Waterman*, 126 F.4th 1287, 1295 (7th Cir. 2025) (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc)).

The record in this case shows that Dr. Henze evaluated Plaintiff on October 9, 2021, and immediately referred him to AMITA Health Joliet for nausea and vomiting because, in her medical judgment, such signs and symptoms could be consistent with diabetic ketoacidosis (which must be treated in a hospital setting). Throughout October and November 2021, Plaintiff was seen and evaluated by Dr. Henze, and, on multiple occasions, she assessed Plaintiff's toe ulcers and continued to recommend medications and dressing changes (although Plaintiff refused treatment at times). Dr. Henze also prescribed Plaintiff antibiotics at the end of October 2021 based on his diagnoses of MRSA, e-coli and pseudomonas. Dr. Henze continued referring Plaintiff out to specialists/outside providers in order for him to be further provided care and treatment. By February of 2022, his wounds healed, with no further signs of infections, and Plaintiff specifically testified that Dr. Henze's treatment cleared him of his MRSA and e-coli infections.

With respect to Plaintiff's claim concerning his Klonopin and the crushing of his medication, the record shows that Dr. Henze discontinued Plaintiff's Klonopin in March of 2022. Dr. Henze submitted an affidavit indicating that she did so because, based on her medical education, training, and experience, she believed it would be more beneficial to Plaintiff to use "watchful waiting" to determine whether Plaintiff's self-reported symptoms of Todd's paralysis changed. Defendant Henze's affidavit indicates that she made this medical decision because Plaintiff's self-reported symptoms of Todd's paralysis were not life-threatening, and she did not want to provide medication to Plaintiff unless there was an objective need for the medication. The record shows that in December 2022, Dr. Henze gave Plaintiff a new seizure medication (Keppra) that was more tailored to his symptoms and complaints of seizures. The record also shows that Dr. Henze's order to crush Plaintiff's other medications was based on her medical training, education, and experience, to ensure that Plaintiff would take all of his medications. The "crush

13

and float" method is a standard tool/procedure used by Dr. Henze and other treating physicians at IDOC that involves crushing medications into a powdered substance and mixing it with a liquid to ensure Plaintiff would take all of his medications.

On this record, no reasonable jury conclude that Defendant Henze acted with deliberate indifference to Plaintiff's serious medical conditions. As discussed above, Dr. Henze promptly attended to Plaintiff's evolving/changing medical needs, and there is nothing in the sequence of events described above that suggests that the particular medical decisions made by Dr. Henze (with his respect to his various ailments and medications) were "so far afield of accepted professional standards as to raise the inference that [they] [were] not actually based on medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (a medical professional is "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under these circumstances").

Plaintiff's summary judgment materials are difficult to parse, but his main argument seems to be that he was *delayed* medical care early-on in September 2021. (*See* Dkt. 246 at pg. 1.) In his memorandum of law, he asserts that Dr. Henze was aware of his "conditions" prior to October 2021 and that "[he] made numerous sick call requests and complaints [he] wasn't being treated." (*Id.*) But Plaintiff's generalized argument about a purported delay in medical care for his "conditions" fails for several reasons. First, there is no evidence in the record establishing that Plaintiff submitted a request slip for medical care in September 2021, despite his express acknowledgment that he was aware of the system for requesting the same. Second, even if he did, the evidence before this Court shows that the request would have gone to the nurses, not Dr. Henze, against whom Plaintiff's Eighth Amendment claim is asserted. Third, even assuming Dr. Henze

14

was aware of Plaintiff's request or need for medical care in September 2021 (for the particular ailments/conditions that are the subject of this suit), his argument concerning what he describes as an "early-on" delay of treatment is not, by itself, enough to defeat summary judgment. Indeed, delays in treatment that aggravate an injury or needlessly prolong an inmate's pain may violate the Constitution. *See Gomez v. Randle*, 680 F.3d 859, 865–66 (7th Cir. 2012). But to prevail on such a claim, a plaintiff must "introduce[] verifying medical evidence that shows his condition worsened because of the delay." *Knight*, 590 F.3d at 466; *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007) (a plaintiff must "offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm"). Plaintiff submits no such evidence here.

Plaintiff also seems to try to defeat summary judgment by calling into question Dr. Henze's decision to take him off Klonopin and later put him on Keppra.[12] Plaintiff asserts in his memorandum of law that his "treating doctor" ordered Klonopin for him in March 2022, and that a Dr. Bruckner re-ordered the Klonopin medication for him in April 2022. (Dkt. 246 at pg. 2.) But Plaintiff's contentions are not supported by the evidentiary material to which he cites (*see id.*), and, in any event, a mere disagreement among providers does not amount to deliberate indifference. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996); *see also Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (rejecting prisoner's argument that prison doctor's choice of pain medication demonstrated deliberate indifference because the prisoner's own doctor recommended a different medication when no evidence suggested that the

---

[12] Again, the Court notes that Plaintiff's summary judgment materials are disorganized and difficult to follow, including with respect to this particular point. At the pleading stage, Plaintiff complained that his seizure "meds" were "take[n][,]" his medication was crushed, and that this resulted in harm. (*See* Dkt. 90 at pg. 2.) On a fully-developed record though, and after Plaintiff was given an opportunity to respond to Defendant Henze's motion for summary judgment, it remains unclear to the Court as to exactly why Plaintiff wished to remain on Klonopin and to receive his medications in solid form.

15

prison doctor's decision was a substantial departure from accepted professional standards or was not based on a medical judgment).

Likewise, Plaintiff's generalized contention that Dr. Henze "disliked" him (*see* Dkt. 246 at pgs. 1-2) and, at some point, specifically told him she would give him his medications/stop crushing them if he dropped this lawsuit[13] is not sufficient to defeat summary judgment. Initially, merely unprofessional and generally uncouth behavior, particularly that which is only verbal in nature, does not, standing alone, violate the Constitution, *see DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). Moreover, the evidence before this Court shows that Dr. Henze's medical decisions concerning Plaintiff's seizure medication were based on her medical judgment, and Plaintiff has not come forward with any evidence to suggest that her decisions concerning his medication were inappropriate and so far afield from standard practices that no reasonable provider would have done so. *See English v. Obaisi*, No. 12–CV–3293, 2014 WL 348621, at *3 (C.D. Ill. Jan. 31, 2014) (granting summary judgment where Plaintiff had no evidence that Dr. Obaisi's conservative treatment was outside the ordinary standard of care and Plaintiff's "primary problem with Dr. Obaisi appears to be what Plaintiff described as Dr. Obaisi's dismissive and callous attitude"); *see also Jones v. Aguinaldo*, No. 10 C 313, 2015 WL 1299284, at *10 (N.D. Ill. Mar. 19, 2015) ("While inappropriate and unprofessional, [the] alleged comments are insufficient to demonstrate that Dr. Aguinaldo deprived Jones of necessary medical treatment because Dr. Aguinaldo had a subjectively malicious or deliberately indifferent state of mind."); *Dortch v. Davis*, No. 11-CV-0841-MJR-SCW, 2014 WL 1125588, at *6 (S.D. Ill. Mar. 21, 2014) ("Rudeness

---

[13] In his second amended complaint, Plaintiff alleged that Dr. Henze and Warden Osbourne "told [him] to [his] face if [he] stopped the lawsuit they would give [him][his] meds back. If not [he] could deal with the consequences." (Dkt. 90 at pg. 6.) At his deposition, Plaintiff testified that "[Dr. Henze] told [him] if [he] dropped the Complaint, she would give [him] the medication back." (Dkt. 230-2 at 56:16-18.) Defendant Henze denies having made this statement (*see* Dkt. 230-4 at ¶ 29), but, at the summary judgment phase, the Court will assume that Dr. Henze made the statement, as Plaintiff says.

is not grounds for recovery under the deliberate indifference framework, and the evidence shows that the medical staff was working to confirm Plaintiff's diagnosis of sleep apnea at the time that he met with [Plaintiff] about his diabetes.").

It may be that Plaintiff desired a particular type or mode of treatment (with respect to what medication he received, when he received it, and in what form), but his personal preference, without more, is simply not enough to establish deliberate indifference. *See Broadfield v. Williams*, 768 Fed. App'x 544, 549 (7th Cir. 2019) (explaining that prisoner "was not entitled to his preferred set of medications and treatments" so long as his medical providers "did not act recklessly"); *Williams v. Patton*, 761 Fed. App'x 593, 597 (7th Cir. 2019) ("mere disagreement with a medical professional's otherwise reasonable treatment is not a basis for a constitutional claim") (citing *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)).

Accordingly, Defendant Henze is entitled to summary judgment on Plaintiff's Eighth Amendment medical deliberate indifference claim, and her motion is granted as to this issue.

### B. Plaintiff's Claim for Punitive Damages

Because Plaintiff has not brought forth evidence of deliberate indifference, Dr. Henze is necessarily entitled to summary judgment on Plaintiff's punitive damages claim as well, as it is governed by the same standard. *See Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 930 (7th Cir. 2004).

Accordingly, Defendant Henze's motion is granted as to this issue.

### C. Plaintiff's Official Capacity/*Monell* Claim against Defendant Henze

Plaintiff has not shown a constitutional problem with his care (for the reasons discussed above), nor has he shown any evidence that that he was injured due to an institutional policy. In such circumstances, there is no municipal liability. *See Johnson v. Prentice*, 29 F.4th 895, 905

(7th Cir. 2022) (dismissing *Monell* claim that "suffer[ed] from two deficiencies: there is no proof of an underlying constitutional violation by any individual Wexford defendant nor any evidence that an institutional policy caused such a violation."). Accordingly, Defendant Henze is entitled to summary judgment on her official capacity/*Monell* claim, and the motion for summary judgment is granted as to this issue.

## V.     Conclusion

Defendant Henze's motion for summary judgment (Dkt. 228) is granted in its entirety.

As a final matter, the Court notes that there are a number of Defendants (Dr. Tucco, Dr. Battista, Wexford Health Care Director, John Doe Dr. at Joliet Hospital, Joliet Catholic Hospital Medical Director, Warden Gomez, and Director IDOC) (*see* Dkt. 90 at pg. 1) who were named in the second amended complaint and remain as active Defendants in this case. At this juncture, dismissal of the unserved Defendants (John Doe Dr. at Joliet Hospital, Joliet Catholic Hospital Medical Director, and Warden Gomez) is warranted. *See* Fed. R. Civ. P. 4(m); Fed. R. Civ. P. 15(c); *see Ellis v. Carper*, 2024 U.S. App. LEXIS 24129, *8 (7th Cir., Sept. 23, 2024) (citing *Manley v. City of Chicago*, 236 F.3d 392, 395 (7th Cir. 2001)). With respect to Defendants Tucco and Battista, the docket reflects that an attorney appeared on their behalf back in April 2023. (*See* Dkt. 68.) Given that Defendant Henze is entitled to summary judgment on Plaintiff's medical claim, and that Plaintiff seems to have sued Tucco and Battista on a similar theory concerning his medical care (*see* Dkt. 90 at pg. 2), the Court orders Plaintiff to show cause, by the date set forth above, why it should not enter summary judgment in favor of Tucco and Battista pursuant to Rule 56(f)(1).

Date: November 14, 2025                                /s/ Hon. Elaine E. Bucklo
                                                          United States District Judge